Filed 5/19/26  P. v. Boyer CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GARRY LEE BOYER,<br><br>    Defendant and Appellant. | 2d Crim. No. B341650<br>(Super. Ct. No. CR28756)<br>(Ventura County) |

      Garry Lee Boyer appeals after the trial court denied his petition to terminate his sex offender registration requirement. (Pen. Code, § 290.5.)[1]  He contends the trial court erred because there is insufficient evidence to support a finding that community safety would be significantly enhanced by his continued registration.  He also contends that the denial of his petition violated due process.  We affirm.

---

    [1] All further statutory references are to the Penal Code.

*Factual and Procedural Background*[2]

In May 1990, appellant met the victim, R.G., and her biological mother, Carolyn. At the time, appellant was 26 years old, and the victim was six years old. One year prior, when the victim was five years old, she was molested by her neighbor who later admitted to the molestation and pleaded guilty.

Approximately one year after meeting Carolyn, appellant moved into the home she shared with the victim and the victim's younger brother. In September 1991, the victim complained to her mother of painful urination. Carolyn took the victim to the doctor the following day. During an examination, the doctor found a cluster of lesions in the victim's vagina, which was later determined to be herpes. When the doctor asked the victim if she had "'ever been touched down there,'" the victim replied, "'it's a secret, I'll get in trouble if I tell.'" The victim refused to discuss the matter further and the police were summoned. (Italics omitted.)

While the victim and her mother waited for police to arrive, nurses overheard the victim tell her mother, " 'he said he would hurt me and would hurt you if I told. . . . He hurts me when he touches me with it, when he puts it on me.' " Another nurse heard the victim say, " 'I can't tell you; he'll kill me.' " The victim was very upset and started crying hysterically. (Italics omitted.)

When police arrived, the victim disclosed that appellant had molested her repeatedly. She explained that when her mother was at school, appellant would tell her brother to go play outside, leaving appellant alone with the victim. She described

---

[2] We summarize these facts from the prosecution's opposition to appellant's petition to terminate sex offender registration.

2

how appellant would remove her clothes, put his finger inside her vagina, and then put his penis inside her vagina.  She would often cry out to him that it hurt, but appellant would continue despite her cries.  Appellant also put his penis inside her mouth and inserted his tongue into her vagina.

The victim underwent a medical exam.  The results from that exam did not establish whether vaginal penetration occurred.  Although the doctor found a small opening in the victim's hymen, the doctor explained this could have been a normal anatomical variation.

During a forensic interview, the victim was initially hesitant to describe the abuse.  She eventually drew pictures of " 'Daddy putting his finger in her "part" (vagina); "daddy's wiener" stating "he put it in my mouth" and would not take it out; "daddy putting his penis in her "vagina" saying "it hurts" and "white stuff comes out of daddy's wiener and out of her vagina." ' "

Appellant was charged with seven counts of lewd acts upon a child under the age of 14 (§ 288, subd., (a)), along with special allegations of substantial sexual conduct (§ 1203.066, subd. (a)(8)).

At the jury trial, the defense presented expert testimony that the medical findings did not support penetration.  The victim's mother also testified, suggesting that the victim's detailed and credible information stemmed from her prior sexual abuse.

The prosecution presented evidence that appellant tested positive for herpes.  The medical evidence established that there are two types of herpes: Type I, which is typically found in the mouth and upper body, and Type II, which is more commonly

3

found in the lower body and genital area. The prosecution's evidence showed that appellant has Type I herpes and transmitted it to the victim's genital area. Additionally, the victim's antibodies indicated a very recent infection, which undermined the defense's suggestion that she had contracted herpes from her prior abuser.

In March 1992, the jury convicted appellant on all seven counts and found true the special allegations of substantial sexual conduct. (§§ 288, subd. (a), 1203.066, subd. (a)(8).) The trial court imposed the maximum available sentence of 23 years in state prison. After the trial court announced the sentence, appellant punched his defense attorney in the face in open court.

*Petition to Terminate Sex Offender Registration*

Appellant was designated a "tier two" registrant by the Department of Justice and required to register as a sex offender for a minimum of 20 years following his conviction and release from prison. (§ 290, subd. (d)(2)(A).)

In October 2023, appellant filed a petition to terminate his sex offender registration pursuant to section 290.5. The prosecution filed an opposition to the petition. The parties subsequently filed additional briefing.

The trial court conducted a hearing on appellant's petition. After the parties presented argument, the trial court took the matter under submission. At a subsequent hearing, the trial court denied the petition, finding that community safety would be significantly enhanced by appellant's continued registration. The trial court also ordered that appellant may not file another petition for five years.

*Discussion*

California law has long required persons convicted of certain sex crimes to register as sex offenders. (*People v. Mosley* (2015) 60 Cal.4th 1044, 1048.) Historically, if registration was required, it was "always for life." (*People v. Franco* (2024) 99 Cal.App.5th 184, 190 (*Franco*).) However, this "led to California having 'the largest number of registrants in the nation,' 'mak[ing] it difficult for law enforcement to effectively supervise those who present[ed] the greatest public danger.' [Citations.] In order to reduce the burden on this overwhelmed system and thereby free up law enforcement to supervise the sex offenders who pose the greatest risk to the community [citation], our Legislature amended the sex offender registration statutes . . . to create a three-tiered system, with offenders in each tier presumptively obligated to register for different periods of time depending on the degree of risk they pose to the community . . . ." (*Id.* at pp. 190-191.)

In general, tier one offenders must register for a minimum of 10 years, tier two offenders must register for a minimum of 20 years, and tier three offenders must register for life. (§ 290, subds. (d)(1)(A), (2)(A), (3).) Once a person has been on the registry for the minimum amount of time mandated by their tier, that person may file a petition to be removed from registry and for relief from the duty to continue to register. (§ 290.5, subd. (a)(1).) The district attorney may oppose the petition by requesting a hearing and presenting evidence to establish that "community safety would be significantly enhanced by requiring continued registration." (*Id.*, subd. (a)(2), (3).)

In determining whether to order continued registration, the trial court shall consider seven statutory factors: (1) "the nature

5

and facts of the registrable offense"; (2) "the age and number of victims"; (3) "whether any victim was a stranger at the time of the offense (known . . . for less than 24 hours)"; (4) "criminal and relevant noncriminal behavior before and after conviction for the registerable offense"; (5) "the time period during which the person has not reoffended"; (6) "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program"; and (7) "the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).)  If the trial court denies the petition, it "shall set the time period after which the person can repetition for termination, which shall be at least one year from the date of the denial, but not to exceed five years."  (*Id.*, subd. (a)(4).)

We evaluate a trial court's decision whether to grant or deny a petition for removal from the sex offender registry for an abuse of discretion.  (*Franco*, *supra*, 99 Cal.App.5th at p. 192; *People v. Thai* (2023) 90 Cal.App.5th 427, 433 (*Thai*).)  "A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard."  (*Thai*, at p. 433.)  " 'A merely debatable ruling cannot be deemed an abuse of discretion. . . .' "  (*People v. Johnson* (2022) 12 Cal.5th 544, 605.)

*Substantial Evidence/Abuse of Discretion*

Appellant contends there is insufficient evidence to support the trial court's finding that community safety would be significantly enhanced by continued registration because there was nothing to show that he was currently likely to reoffend.  We disagree.

At the outset, the trial court explained that it had reviewed the parties' moving papers, heard argument from both sides, and read the relevant cases.[3] Thereafter, the trial court carefully weighed all seven statutory factors set forth in section 290.5, subdivision (a)(3) and found six of the seven factors weighed against termination of registration. The only factor in mitigation was the time period during which appellant had not reoffended. As we shall explain, there was no error.

The nature and facts of the registrable offense

The facts of appellant's registerable offense are egregious. The trial court explained that the molestation "took place over a period of time to a significantly vulnerable victim." The prosecution's evidence showed that appellant repeatedly abused the victim when her mother was away at school. Appellant would send the victim's brother outside to play so that he could be alone with the victim. When the victim cried that it hurt, appellant continued. He threatened to hurt the victim and her mother if the victim told anyone. The abuse was only discovered after the victim complained of painful urination and a medical examination revealed she was suffering from a sexually transmitted disease that she will carry for life.

Citing *Thai*, *supra*, 90 Cal.App.5th 427 and *Franco*, *supra*, 99 Cal.App.5th 184, appellant contends that even if the underlying offenses were egregious, that alone does not demonstrate that he is still a risk to the community now that the minimum registration period has expired.

But the trial court did not base its decision on this factor alone. Indeed, it expressly acknowledged that *Franco* "stand[s]

---

[3] One of the cases the trial court considered has since been ordered depublished. This does not affect our analysis.

7

for the proposition that the charge itself cannot be the only consideration." Instead, it distinguished *Thai* and *Franco* and properly found this factor was not mitigating. For example, in *Thai*, the defendant store employee molested a 12-year-old boy in a single, isolated incident. (*Thai*, *supra*, 90 Cal.App.5th at p. 430.) In *Franco*, the defendant molested his stepdaughter on two occasions approximately one year apart. (*Franco*, *supra*, 99 Cal.App.5th at p. 188.) Here, by contrast, appellant's sex offenses occurred repeatedly over a period of 17 months to a significantly vulnerable victim.

Moreover, although the prosecution argued in detail that appellant could now be prosecuted under section 288.7, which mandates lifetime registration—an argument explicitly rejected in *Franco*—the trial court's analysis did not turn on this point. (*Franco*, *supra*, 99 Cal.App.5th at pp. 195-196.) Rather, it was the repeated and serious nature of appellant's conduct that showed he remained a risk to the community.

Age and number of victims

The trial court found this factor weighed against termination. The victim in this case was six or seven years old when appellant molested her. She relied on him as "father figure," which made her particularly vulnerable. She was also not his only victim. When appellant was a juvenile, he took his three-year-old neighbor into his room and rubbed her vagina. For his conduct in that case, he was originally charged violating section 288, subdivision (a) but pleaded guilty to the lesser crime of section 647, subdivision (a).

In finding this factor weighed against termination, the trial court properly considered appellant's history, which included

8

"more than one prior sex offense" and "two significantly young victims."

Whether any victim was a stranger at the time of the offense

Although the victim in appellant's registerable offense was not a stranger, the trial court noted that appellant's first victim was a "stranger victim." Thus, considering the "total picture," the trial court found this factor weighed against termination.

Criminal and noncriminal behavior

Appellant has a lengthy criminal history, which includes numerous juvenile offenses and adult criminal convictions. In 1985, he was convicted of robbery after he held a knife to the cashier's throat. For that offense, appellant was sentenced to four years in state prison.

When appellant was sentenced for his registerable offense, he punched his attorney in the face. While he was incarcerated, he had numerous write ups, including for "making false allegations" and "manipulating staff."

After his release from prison, he sustained numerous parole violations. He absconded from parole on more than one occasion, threatened his parole officer after standing up from his wheelchair, stating, " 'I can walk now mother fucker, I'll fuck you up,' " took a swing at a physician, threatened motel staff, and punched a correctional officer several times in the face. A parole summary noted that appellant "has no intentions on doing a positive parole program" and "[n]o matter how [appellant] looks on the surface, he has full capability to become violent towards officers very quickly."

The trial court properly considered this factor and found it was "not mitigati[ng]."

Time period without reoffense

Appellant has not been arrested or charged with a new sexual offense since his release.  The trial court correctly found this factor was mitigating.

Completion of sex offender treatment program

Appellant has not sought or completed any sex offender treatment following his registrable offense.  As the trial court observed, "[h]e's never taken responsibility for the conduct" and continues to deny it.  The trial court found this suggests "a strong risk of re-offense."

We agree, particularly when contrasted with the petitioners in *Franco* and *Thai*.  For example, in *Franco,* the petitioner participated in psychotherapy sessions, completed a counseling program, and demonstrated a willingness to admit to the crimes and show remorse.  (*Franco, supra*, 99 Cal.App.5th at p. 189.)  In *Thai*, the petitioner expressed remorse for his conduct and indicated he would complete counseling.  (*Thai, supra*, 90 Cal.App.5th at p. 434.)

Appellant asserts he took responsibility for his juvenile sexual offense, and suggests that it is "entirely possible" that his "refusal to accept responsibility" for the registerable offenses is "because he didn't actually commit them."  But the jury concluded otherwise.

Appellant also asserts that he did complete a sex offender treatment program in connection with his juvenile offense.  But this evidence is not mitigating considering that he went on to commit egregious acts of molestation on another young and vulnerable victim.  The trial court properly found this factor weighed against termination.

Current risk of sexual or violent reoffense

10

In 2007, appellant was evaluated by three independent psychologists for possible Sexually Violent Predator (SVP) designation. All three psychologists diagnosed appellant with pedophilia and antisocial personality disorder. Two of the three psychologists found he did not meet the criteria for SVP commitment. One psychologist concluded he qualified as a "psychopath who is likely to continue to commit crimes in the future." And all three psychologists scored appellant's risk of reoffending using the Static-99 as between 4 and 5, indicating a moderate to high likelihood of reoffense.

Appellant contends this evidence is insufficient to establish the necessary current risk of reoffense. Although he acknowledges that the standard for SVP commitment and denial of relief under section 290.5 are different, he argues there is an "overlap" in that both require risk of reoffense. He points out the reports in this case are over 18 years old, his risk of reoffense is even less now, he has lived in the community for two decades since his release from prison without reoffending; he is over 60 years old and in poor health; he remains married to his wife of over 30 years (Carolyn); he has established a relationship with his daughter (from another relationship) who trusts him to spend time with her children and has never seen him do anything inappropriate.

But the trial court properly considered all of the evidence and found this factor weighed against termination. As the trial court explained, appellant has "no insight" into his behavior, particularly given that there were "two similarly situated offenses," and an "aggressive denial" despite his conviction by jury.

11

Although we acknowledge appellant's age and physical impediments are relevant considerations in determining his current risk of reoffense, they do not negate the substantial evidence that supports the trial court's finding that appellant's continued registration would significantly enhance community safety.  On this record, there was no error.

For the reasons discussed above, we also conclude there was no constitutional violation.

*Disposition*

The order is affirmed.

NOT TO BE PUBLISHED.


                                    YEGAN, Acting P. J.

We concur:


        BALTODANO, J.


        CODY, J.

Paul Feldman, Judge

Superior Court County of Ventura

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Sophia A. Lecky, Deputy Attorney General, for Plaintiff and Respondent.